UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYNAN HOFFMAN,<br><br>                              Plaintiff,<br><br>          - v -<br><br>CITY COLLEGE OF NEW YORK, and CITY<br>UNIVERSITY OF NEW YORK,<br><br>                              Defendants. | **MEMORANDUM<br>OPINION & ORDER**<br><br>20 Civ. 1729 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

              In this action, Plaintiff Tynan Hoffman alleges disability discrimination in

violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.;

Section 503 of the Rehabilitation Act, 29 U.S.C. § 793; the New York State Human Rights Law

("NYSHRL"), New York Executive Law § 290 et seq.; and the New York City Human Rights

Law ("NYCHRL"), New York City Administrative Code § 8-101 et seq.  (See Am. Cmplt. (Dkt.

No. 12))  Defendants are the City College of New York ("City College") and the City University

of New York ("CUNY") (collectively, "Defendants").  (Id.)  Plaintiff has moved to file a Second

Amended Complaint, which includes a claim under Section 504 of the Rehabilitation Act, 29

U.S.C. § 794.  (See Dkt. No. 23)  Defendants have moved to dismiss.[1]  (See Dkt. No. 25)  For

the reasons stated below, Plaintiff's motion for leave to file a Second Amended Complaint will

be granted as to the Section 504 claim, and Defendant's motion to dismiss the Amended

---

[1]  Defendants assert that they are moving to dismiss Plaintiff's proposed Second Amended
Complaint.  (See Mot. (Dkt. No. 25))  Because the proposed Second Amended Complaint has
not yet been approved for filing, Defendants' motion to dismiss it is premature.  The Court
construes Defendants' motion as one to dismiss the operative complaint, which is the Amended
Complaint.

Complaint will be granted.

## BACKGROUND

### I.   FACTS[2]

Plaintiff suffers from "major depressive disorder," which causes "a variety of symptoms, including but not limited to loss of energy, loss of motivation, difficulty concentrating, difficulty learning and more." (Am. Cmplt. (Dkt. No. 12) ¶ 10) "Plaintiff receives ongoing treatment for his disability." (Id. ¶ 11)

In 2008, when Plaintiff was a student at City College,[3] he began working at the City College library as an assistant. (Id. ¶ 12) In July 2013, Plaintiff became a full-time reference librarian at City College. (Id. ¶ 13) "Defendants require that all librarians have two master's degrees. A librarian must have a master's degree upon hiring and the second must be completed within five years of employment." (Id. ¶ 14) Plaintiff had one master's degree when he became a full-time employee. (Id. ¶ 15) In the spring of 2014, Plaintiff enrolled in courses to obtain his second master's degree. (Id. ¶ 16)

"[I]n 2015[,] [Plaintiff's] grades began to suffer due to his disability," and he "struggled to complete his courses and final papers," receiving "four incompletes." (Id. ¶ 17) In 2018, Plaintiff asked Chief Librarian Charles Stewart "to accommodate him by allowing him an extra year to obtain his [second] master's degree because of his disability and the symptoms he experienced as a result of his disability." (Id. ¶ 18) Plaintiff's request was granted, and he was given an additional year to obtain his second master's degree. (Id. ¶ 19) While completing the

---

[2] The facts set forth in the Amended Complaint are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

[3] Defendant "City College is a public senior college of the CUNY school system." (Am. Cmplt. (Dkt. No. 12) ¶ 7)

course work necessary to obtain the second master's degree, Plaintiff "was performing his tasks at work." (Id. ¶ 20)

In the spring of 2019, Plaintiff asked Stewart for "an additional year to obtain his second master's degree." (Id. ¶ 21) Plaintiff was later "informed via email that his contract was not going to be renewed." (Id. ¶ 22)

"On May 11, 2019, Plaintiff made a formal request for a reasonable accommodation," requesting additional time to obtain his second master's degree. (Id. ¶ 23) In his request, Plaintiff noted "that he was taking medication, which he believed would alleviate his symptoms, allow him to prioritize his schoolwork, and complete the program." (Id. ¶ 24) Plaintiff also provided "documentation regarding his medication and treatment," and a letter from his doctors stating that he "would benefit from a one-year extension of the Defendants' arbitrary deadline." (Id. ¶ 25) He claims that "no one approached him to afford him the chance to engage in the interactive process." (Id. ¶ 26)

On August 20, 2019, Defendants denied Plaintiff's request for a reasonable accommodation. (Id. ¶ 27; see id. ¶ 28 ("Defendants informed Plaintiff that they were not obligated to 'fundamentally modify the nature, operation, or standards of its business.'"))[4] On October 14, 2019, Plaintiff submitted an internal appeal regarding the denial of his reasonable accommodation request. (Id. ¶ 35) That same day, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 34)

On December 5, 2019, Defendants informed Plaintiff that his appeal had been denied. (Id. ¶ 36) On December 19, 2019, Plaintiff received a Notice of Right to Sue from the EEOC. (Id. ¶ 37)

---

[4] The Amended Complaint does not identify the source of the quoted material.

II.     **PROCEDURAL HISTORY**

        The Complaint was filed on March 2, 2020, naming "City College of New York" as the sole defendant.  (Cmplt. (Dkt. No. 1))

        In a March 27, 2020 letter, CUNY asserted that "Plaintiff improperly names City College as the defendant in this action.  City College, a senior college in the CUNY system, is not a 'legally cognizable entity apart from CUNY.'  CUNY is thus the sole proper institutional defendant in this action."  (Mar. 27, 2020 Def. Ltr. (Dkt. No. 6) at 1 (quoting Clissuras v. City Univ. of N.Y., 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam)))[5]  CUNY also sought permission to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff's claims are barred by sovereign immunity.  (Id.)

        On April 23, 2020, Plaintiff requested leave to amend (Apr. 23, 2020 Pltf. Ltr. (Dkt. No. 9)), which this Court granted the next day pursuant to Federal Rule of Civil Procedure 15(a)(1).  (Apr. 24, 2020 Order (Dkt. No. 10))

        The Amended Complaint was filed on May 5, 2020, and names City College of New York and City University of New York as Defendants.  (Am. Cmplt. (Dkt. No. 12))  The Amended Complaint pleads claims of disability discrimination under the ADA, Section 503 of the Rehabilitation Act, the NYSHRL, and the NYCHRL.  (Id. ¶¶ 39-72)

        In a May 19, 2020 letter, CUNY sought permission to move to dismiss, contending that all of the claims pled in the Amended Complaint fail as a matter of law.  (May 19, 2020 Def. Ltr. (Dkt. No. 15))

        In a May 25, 2020 letter, Plaintiff again sought leave to amend, stating that he

---

[5]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

wished to add a claim pursuant to Section 504 of the Rehabilitation Act. (May 25, 2020 Pltf. Ltr. (Dkt. No. 17) at 1)

The Court then set a briefing schedule for both CUNY's motion to dismiss and Plaintiff's motion to amend. (June 1, 2020 Order (Dkt. No. 19))

Plaintiff filed his motion to amend on August 4, 2020. (Pltf. Mot. (Dkt. No. 23)) The proposed Second Amended Complaint ("SAC") drops Plaintiff's claim alleging a violation of Section 503 of the Rehabilitation Act, and adds a claim under Section 504 of the Rehabilitation Act. (SAC (Dkt. No. 23-1))

CUNY thereafter filed its opposition to Plaintiff's motion to amend, along with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Def. Mot. (Dkt. No. 25); Def. Br. (Dkt. No. 26); Def. Reply Br. (Dkt. No. 27))

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Motion

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (citation and quotation marks omitted); see also

Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."). "Under Rule 12(b)(1), even a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient." Castillo v. Rice, 581 F. Supp. 2d 468, 471 (S.D.N.Y. 2008) (citation and quotation marks omitted).

In considering a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).

### B.   Rule 12(b)(6) Motion

For a complaint to survive a Rule 12(b)(6) motion to dismiss, a "plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, a court accepts as true all well-pled factual allegations but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id.  Moreover, a court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  Where a court can infer no more than the

mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible" – dismissal is appropriate.  Twombly, 550 U.S. at 570.

      **C.**    **Motion to Amend**

      Under Fed. R. Civ. P. 15(a), district courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000), and generally "leave to amend should be freely granted when 'justice so requires.'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)); see Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))).

      A court may properly deny leave to amend, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman, 371 U.S. at 182).

      "[A] party opposing a motion to amend . . . bears the burden of establishing that an amendment would be futile."  Bonsey v. Kates, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013).  "Ordinarily, leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss."  Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014), aff'd sub nom. APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.,

725 F. App'x 4 (2d Cir. 2018); see also Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258

(2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand

a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

## II.     ANALYSIS

### A.     Motion to Dismiss the Amended Complaint

In its motion dismiss, CUNY argues – as an initial matter – that City College of

New York is not a proper defendant in this action, because it is part of the CUNY system and is

not a "'legally cognizable entity apart from CUNY.'"  (Def. Br. (Dkt. No. 26) at 2 n.1 (quoting

Clissuras v. City Univ. of N.Y., 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam)))

In Clissuras, the Second Circuit explained that, "[u]nder New York Law, CUNY

is a separate corporate body . . . [that] is composed of 'each senior college and each community

college.'"  359 F.3d at 81 n.2 (citation omitted).  The court went on to find that one of CUNY's

senior colleges – New York City Technical College – is not a "legally cognizable entity apart

from CUNY."  Id.  Here, the Amended Complaint pleads that "City College is a public senior

college of the CUNY school system."  (Am. Cmplt. (Dkt. No. 12) ¶ 7)  Accordingly, City

College is not a legally cognizable entity, and all claims against it will be dismissed.  See id.

CUNY further contends that Plaintiff's ADA, NYSHRL, and NYCHRL claims

are barred by the Eleventh Amendment, and moves to dismiss those claims under Rule 12(b)(1)

for lack of subject matter jurisdiction.  (Def. Br. (Dkt. No. 26) at 5-6)

"The Eleventh Amendment bars suits against state agencies unless the state

waives its sovereign immunity or it is validly abrogated by Congress."  Quadir v. New York

State Dep't of Lab., 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014); see also Clissuras, 359 F. 3d at 81

("It is well settled that the 'ultimate guarantee' of the Eleventh Amendment is that

'nonconsenting States may not be sued by private individuals in federal court.'" (quoting <u>Bd. of Trustees v. Garrett</u>, 531 U.S. 356, 363 (2001))).  "[T]he Eleventh Amendment extends immunity 'not only to a state, but also to entities considered "arms of the state."'"  <u>Id.</u> (quoting <u>McGinty v. New York</u>, 251 F.3d 84, 95 (2d Cir. 2001)).

In <u>Clissuras</u>, the Second Circuit held that CUNY and each of its senior colleges "is an 'arm of the state,'" and that "suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment."  <u>Id.</u> at 83; <u>see also</u> <u>Garcia v. City Coll. of New York</u>, No. 05CIV3664LTSGWG, 2005 WL 3312253, at *1 (S.D.N.Y. Dec. 5, 2005) ("CUNY and all of its senior colleges are legal entities of the State of New York and are accordingly entitled to Eleventh Amendment immunity from suit in federal court absent waiver of suit."); <u>Hamilton v. City Coll. of the City Univ. of New York</u>, 173 F. Supp. 2d 181, 184 (S.D.N.Y. 2001) ("This court agrees with the conclusion of other courts in this district that the senior colleges of the CUNY system are arms of the state of New York for Eleventh Amendment purposes." (citations omitted)).

"The Supreme Court has unequivocally held that Congress has not effectively abrogated Eleventh Amendment immunity with respect to an individual's ADA claim for damages against a state (or an arm of a state) based on a theory of employment discrimination, <u>i.e.</u>, a Title I claim."[6]  <u>Relf-Davis v. NYS Dep't of Educ.</u>, No. 13 CIV. 3717 PAC, 2015 WL 109822, at *6 (S.D.N.Y. Jan. 7, 2015) (collecting cases).  And "the New York

---

[6]  Although the Amended Complaint does not reference a particular title under the ADA, only ADA Title I provides a basis for Plaintiff's ADA claim for disability discrimination in employment.  <u>See</u> <u>Mary Jo C. v. New York State & Loc. Ret. Sys.</u>, 707 F.3d 144, 171 (2d Cir. 2013) ("[W]e conclude that the [ADA] unambiguously limits employment discrimination claims to Title I.  A public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees.").  Accordingly, the ADA Title II cases cited by Plaintiff (Pltf. Opp. Br. (Dkt. No. 28) at 4) are not on point.

Legislature has never waived its sovereign immunity from liability under Title[] I . . . of the ADA." Quadir, 39 F. Supp. 3d at 537.  Accordingly, Plaintiff's ADA claim against CUNY is barred by the Eleventh Amendment and will be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Moreover, because "[t]he Eleventh Amendment [also] bars suits, regardless of the relief sought, alleging violations of state law against the State of New York, its agencies and agents, unless the state has consented to being sued in a federal forum," "claims under the NYSHRL and the NYCHRL" are likewise barred.  Canales-Jacobs v. New York State Off. of Ct. Admin., 640 F. Supp. 2d 482, 499 (S.D.N.Y. 2009); see also Quadir, 39 F. Supp. 3d at 537 ("New York has not waived its Eleventh Amendment immunity for NY[S]HRL suits in federal courts." (citation and quotation marks omitted)); id. at 538 (dismissing claims against New York State under the NYCHRL on Eleventh Amendment grounds).  Accordingly, Plaintiff's NYSHRL and NYCHRL claims against CUNY will likewise be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Although Plaintiff – in the proposed SAC – drops his claim under Section 503 of the Rehabilitation Act, the Court notes that the Second Circuit has held that Section 503 of the Rehabilitation Act does not provide a private right of action.  See Davis v. United Air Lines, Inc., 662 F.2d 120, 127 (2d Cir. 1981) ("we conclude, as have the other three courts of appeals that have passed upon the question, that no implied private right of action exists under section 503").  Accordingly, Plaintiff's Rehabilitation Act Section 503 claim fails to state a claim, and it will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B.**     **Motion for Leave to File a Second Amended Complaint**

Plaintiff seeks leave to file a Second Amended Complaint, which adds a claim

under Section 504 of the Rehabilitation Act.  (See SAC (Dkt. No. 23-1) at 7-8; see also Pltf. Mot.

(Dkt. No. 23))  In his proposed Section 504 claim, Plaintiff alleges that "Defendants

discriminated against [him] on the basis of his disability by failing to provide a reasonable

accommodation and subsequently terminating his employment."  (Id. ¶ 56)

       As discussed above, a motion to amend may be denied where amendment would

be futile, and "[a]n amendment to a pleading is futile if the proposed claim could not withstand a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  Lucente, 310 F.3d at 258.

       Here, CUNY does not contend that Plaintiff's proposed Section 504 claim is

barred by the Eleventh Amendment.[7]  Instead, CUNY argues that the proposed amendment

would be futile, because Plaintiff's Section 504 claim fails to state a claim under either a theory

of disability discrimination in employment or a reasonable accommodation theory.  (Def. Br.

(Dkt. No. 26) at 7-11)[8]

_____

[7]  "Courts in this Circuit have held that New York State's continued receipt of federal funds
under § 504 after [Garcia v. State Univ. of N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 113
(2d Cir. 2001)] 'constitutes a knowing waiver of sovereign immunity.'"  Seitz v. New York
State, No. 2:18-CV-4149 (PKC) (LB), 2019 WL 4805257, at *6 (E.D.N.Y. Sept. 30, 2019)
(quoting Gentleman v. State Univ. of N.Y.-Stony Brook, 16-cv-2012 (ADS) (AKT), 2016 WL
6892151, at *5 (E.D.N.Y. Nov. 21, 2016)); see also Hamm v. City Univ. of New York, 20-CV-
2876 (LLS), 2020 WL 4547226, at *3 (S.D.N.Y. Aug. 5, 2020) (finding that claims against
CUNY pursuant to Section 504 are not barred by the Eleventh Amendment); Quadir v. New
York State Dep't of Lab., 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014) ("Since the Rehabilitation
Act does include such a requirement [i.e., Congress conditioning acceptance of funds pursuant to
the Rehabilitation Act on the waiver of immunity] and New York does accept federal funds, New
York has waived sovereign immunity with respect to [Rehabilitation Act] claims." (citation and
quotation marks omitted)).

[8]  CUNY also argues that "Plaintiff's opposition brief does not address [CUNY's] arguments
regarding [Plaintiff's] failure to state a claim of employment discrimination under Section 504 of
the Rehabilitation Act," and that accordingly Plaintiff has "abandon[ed] that purported claim."
(Def. Reply Br. (Dkt. No. 27) at 4)  While it is true that, "[a]t the motion to dismiss stage, . . . a
plaintiff abandons a claim by failing to address the defendant's arguments in support of
dismissing that claim," Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, No. 08-CV-
442 (TPG) (FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014), as discussed above, in
moving to dismiss a pleading that has not yet been received for filing, Defendants acted

A plaintiff must allege the following four elements to state a <u>prima</u> <u>facie</u> claim of disability discrimination under Section 504 of the Rehabilitation Act: "(1) [his] employer is subject to the [Rehabilitation Act]; (2) [he] was disabled within the meaning of the [Act]; (3) [he] was otherwise qualified to perform the essential functions of [his] job, with or without reasonable accommodation; and (4) [he] suffered an adverse employment action because of [his] disability." <u>Quadir</u>, 39 F. Supp. 3d at 540 (citation and quotation marks omitted).

To establish a <u>prima</u> <u>facie</u> case under Section 504 for failure to provide a reasonable accommodation, a plaintiff must plead facts satisfying the following four elements:

> "(1) plaintiff is a person with a disability under the meaning of the [Rehabilitation Act]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

<u>Id.</u> at 539 (quoting <u>Rodal v. Anesthesia Grp. of Onondaga, P.C.</u>, 369 F.3d 113, 118 (2d Cir. 2004)). "'[T]he determination of whether a particular modification is "reasonable" involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.'" <u>Id.</u> (quoting <u>Staron v. McDonald's Corp.</u>, 51 F.3d 353, 356 (2d Cir. 1995)). "Thus, the reasonab[leness] of any proposed accommodation is generally a fact question to be investigated through discovery." <u>Id.</u>

Here, CUNY contends that Plaintiff's proposed Section 504 claim fails for multiple reasons.

---

prematurely. Moreover, Plaintiff's arguments in support of his Section 504 claim are set forth in his motion to amend. (<u>See</u> Dkt. No. 23)

As an initial matter, CUNY asserts that Plaintiff was not "qualified for his position as a librarian," because CUNY requires that all librarians obtain a second master's degree within the first five years of their CUNY employment.  (Def. Br. (Dkt. No. 26) at 8)

"To be qualified [for purposes of a Section 504 disability discrimination claim], the individual must satisfy the requisite skill, experience, education and other job-related requirements of the employment position and must be able to perform the essential functions of the position, with or without reasonable accommodation."  Misek-Falkoff v. Int'l Bus. Machines Corp., 854 F. Supp. 215, 226 (S.D.N.Y. 1994), aff'd sub nom. Misek-Falkoff v. IBM, 60 F.3d 811 (2d Cir. 1995); see also D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998) ("The Supreme Court defines an individual as 'otherwise qualified' if he 'is able to meet all of a [position's] requirements in spite of his handicap.'" (quoting School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 n. 17 (1987))).

In determining whether a plaintiff is "qualified," courts conduct a two-step analysis.  See Mark v. Burke Rehab. Hosp., No. 94 Civ. 3596 RLC, 1997 WL 189124, at *4 (S.D.N.Y. Apr. 17, 1997).[9]  "The first step is to decide whether the individual satisfies the prerequisites for the position, such as having the appropriate education, employment experience, skills, or license."  Id.  "The second step is to decide whether the individual can perform the

_____

[9]  Because Section 504 claims and ADA claims are analyzed pursuant to the same standards, this Court may rely on cases brought under the ADA.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003) (explaining that unless the "subtle distinctions" between a Title II ADA claim and a Section 504 claim are "pertinent to a particular case," "claims under the two statutes" are treated "identically"); De Figueroa v. New York, 403 F. Supp. 3d 133, 158 (E.D.N.Y. 2019) ("Claims of disability discrimination brought pursuant to Title I of the ADA and the Rehabilitation Act are analyzed under the same standards").  While a Section 504 plaintiff "must [also] show that the defendants receive federal funding," Ramirez v. Bernstein, No. 17 CV 3825 (VB), 2020 WL 7230729, at *7 (S.D.N.Y. Dec. 7, 2020) (citation and quotation marks omitted), that element is not contested here.

essential function of the job position, with or without reasonable accommodation."  Id.; see also id. at *5 ("The determination of whether any function is essential is a fact-specific inquiry to be made on a case-by-case basis.").

Here, the proposed Second Amended Complaint acknowledges that "Defendants require that all librarians have two master's degrees," one "upon hiring and the second must be completed within five years of employment."  (SAC (Dkt. No. 23-1) ¶ 14)  Plaintiff likewise concedes that he did not obtain a second master's degree within the first five years of his CUNY employment, and that he sought and obtained from CUNY a one-year extension within which to obtain the second master's degree.  (Id. ¶¶ 15-19)  He also concedes that he did not obtain the second master's degree during the one-year extension, and that he sought another one-year extension, which CUNY denied.  (Id. ¶¶ 21-25, 27)  Accordingly, from the face of the proposed SAC, it appears that CUNY has clear educational requirements for its librarians, which Plaintiff does not meet.  Mark, 1997 WL 189124, at *4.  That does not end the inquiry, however.

"The Second Circuit has observed that the notion of 'otherwise qualified' is inextricably linked to the meanings of both 'essential functions' and 'reasonable accommodation.'"  Parisi v. Coca-Cola Bottling Co. of New York, 995 F. Supp. 298, 303 (E.D.N.Y. 1998), aff'd, 172 F.3d 38 (2d Cir. 1999) (quoting Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 135 (2d Cir. 1995)); see also Borkowski, 63 F. 3d at 135 ("Although the phrase 'otherwise qualified' is hardly unambiguous on its face, its meaning in the context of an employment discrimination claim is fairly clear:  an individual is otherwise qualified for a job if she is able to perform the essential functions of that job, either with or without a reasonable accommodation.").  And, as noted above, in determining the essential functions of a position, "a court must conduct a fact-specific inquiry into both the employer's description of a job and how

14

the job is actually performed in practice." McMillan, 711 F.3d 120, 126 (2d Cir. 2013) (citation

and quotation marks omitted); Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 469 (2d Cir. 2019)

("Although courts are deferential to an employer's judgment regarding what functions are

essential to a particular position, the question involves a fact-specific inquiry into both the

employer's description of a job and how the job is actually performed in practice.  Discovery

may be necessary to determine whether an employee was qualified for a particular position."

(citations and quotation marks omitted)).

          Here, CUNY hired Plaintiff as a full-time reference librarian in July of 2013.

(SAC (Dkt. No. 23-1) ¶ 13)  Plaintiff claims that during the first five years of his employment,

and during the one-year extension period, he "was performing his tasks at work as a librarian."

(Id. ¶¶ 18-20)  Plaintiff further alleges that his "schedule and job responsibilities would not

change upon the completion of his second master's degree."  (Id. ¶ 31; see id. ("Plaintiff would

have similar responsibilities and teaching requirements with one master's degree as he would

have with two."))  And Plaintiff "worked in 2019 without a second master's, with no complaints,

disciplinary actions or issues of any kind.  At all times, [he] was able to perform the essential

functions of his job."  (Id. ¶ 32)

          Acknowledging that universities have the right to set educational and other

requirements for their employees, see Bickerstaff v. Vassar Coll., 196 F.3d 435, 455 (2d Cir.

1999), as amended on denial of reh'g (Dec. 22, 1999); see also Lieberman v. Gant, 630 F.2d 60,

67 (2d Cir. 1980) ("A university's prerogative to determine for itself on academic grounds who

may teach is an important part of our long tradition of academic freedom." (citation and

quotation marks omitted)), "there are a number of relevant factors that may influence a court's

ultimate conclusion as to a position's essential functions," such as "the employer's judgment,

written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." McMillan, 711 F.3d at 126.  "Usually, no one listed factor will be dispositive," and "a court must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice."  Id.  (citation and quotation marks omitted).

　　　　　Here, the proposed SAC pleads facts demonstrating that Plaintiff was able to perform the essential functions of his job – functions that will not change once he obtains a second master's degree.  (SAC (Dkt. No. 23-1) ¶¶ 13, 18-20, 31-32)  It would be premature at this stage of the proceedings to conclude, based solely on CUNY's requirement that librarians obtain a second master's degree within five years of being hired, that Plaintiff is not "qualified" for his position.

　　　　　There are, of courses, circumstances in which job requirements are legally mandated.  In such circumstances, a plaintiff lacking the legally mandated requirements may not be deemed "qualified," because it is unlawful for that individual to perform the job absent the legally mandated license or certification.  See, e.g., Dancause v. Mount Morris Cent. Sch. Dist., No. 13-CV-6019, 2013 WL 2946063, at *1-3 (W.D.N.Y. June 14, 2013), aff'd, 590 F. App'x 27 (2d Cir. 2014) (granting school district's motion to dismiss where plaintiff-teacher – who did not allege "that her periodontal disease in any way interfered with her ability to obtain the proper certification to teach" – lacked a legally required state teaching certification; while the teacher might have been "competent to teach the subject," having taught the subject "for years," she lacked the legally required certification necessary to teach); see id. at *3 ("Where a professional license is required as part of a qualification for a job, a lack of such license renders the employee

unqualified for the position"); see also Kinneary v. City of New York, 601 F.3d 151, 152, 156-57 (2d Cir. 2010) (rejecting disability discrimination claim where a sludge boat captain failed to retain his Coast Guard captain's license; "[b]ecause Kinneary failed to retain his captain's license despite receiving the accommodation to which he claims he was entitled, he was not otherwise qualified to perform the essential functions of his job and cannot make out a successful claim under the ADA"); Falchenberg v. New York City Dep't of Educ., 375 F. Supp. 2d 344, 346-48 (S.D.N.Y. 2005) (granting school district's motion to dismiss where plaintiff-teacher did not take a test established by the state education department; plaintiff was "not a qualified individual because she did not take the examination, which the State ha[d] set as a necessary prerequisite to qualification for a teaching certification"); id. at 348 ("Even more significantly, the complaint against the City Defendants must be dismissed because Plaintiff does not allege that she requested a reasonable accommodation from the City Defendants which was refused."); cf. Giblin v. College, No. 5:2-CV-00477(LEK/ATB), 2021 WL 781363, at *1, 6-10 (N.D.N.Y. Mar. 1, 2021) (denying in part defendant's motion to dismiss a plaintiff-teacher's disability discrimination claims and rejecting defendant's argument that the plaintiff was not otherwise qualified for the position despite her inability to obtain a doctoral degree within one year; noting that "[c]ertain allegations [in the complaint] regarding how the job is actually performed in practice[] provide additional support for an inference that Plaintiff was qualified despite her delayed acquisition of a degree," including "a positive work evaluation that downplayed the significance of her delay in acquiring a degree" (citation and quotation marks omitted)).  But this case does not involve a legally mandated license, certification, or other job requirement.

          In sum, given the facts pled in the proposed SAC as to the functions of the librarian position and Plaintiff's job performance in that position, the Court concludes that it

would be premature to determine, as a matter of law, that Plaintiff is "unqualified" for the

librarian position.[10]

CUNY also argues that the proposed SAC does not allege facts showing that

Plaintiff was not reasonably accommodated.  (Def. Br. (Dkt. No. 26) at 9)

"The Rehabilitation Act provides that '[n]o otherwise qualified individual with a

disability in the United States . . . shall, solely by reason of her or his disability, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." Quadir, 39 F. Supp. 3d at 538

(quoting 29 U.S.C. § 794).  "[R]egulations promulgated under the Rehabilitation Act by the

Department of Health and Human Services require recipients of federal funds to

make reasonable accommodation to the known physical or mental limitations of an otherwise

qualified handicapped . . . employee unless the recipient can demonstrate that the

accommodation would impose an undue hardship on the operation of its program." Id. at 538-39

(citation and quotation marks omitted) (emphasis in original).

"Although the reasonableness of an employer's accommodation is a fact-specific

question that often must be resolved by a factfinder, where an employer has . . . offered[]

measures to accommodate the disability," the employer may be entitled to judgment as a matter

of law "if, on the undisputed record, the existing accommodation is plainly reasonable." Berger

---

[10]   CUNY also contends that "the allegations in the proposed Second Amended Complaint fail to
meet the fourth factor required to state a claim under Section 504.  Plaintiff concedes that his
employment contract was not renewed six years after he was first employed as a reference
librarian and after he failed to earn a second graduate degree.  Nowhere does Plaintiff allege that
his employment was terminated because of his disability."  (Def. Br. (Dkt. No. 26) at 9 (citing
SAC (Dkt. No. 23-1) ¶¶ 13-14, 22))  The Court disagrees.  Plaintiff has alleged that he was
terminated because he was denied a reasonable accommodation – an additional year to obtain his
second master's degree due to his disability.  (SAC (Dkt. No. 23-1) ¶¶ 17-18, 20-25, 27, 29)

v. New York City Police Dep't, 304 F. Supp. 3d 360, 369 (S.D.N.Y. 2018) (citations and
quotation marks omitted)).

        As discussed above, based on the proposed SAC's factual allegations, whether
Plaintiff was "qualified" to perform the essential functions of his job – with or without
reasonable accommodation – presents a question of fact.  Acknowledging that CUNY offered
Plaintiff an accommodation – the one-year extension he sought to obtain his second master's
degree – it rejected his request for a second one-year extension.  Whether or not Plaintiff's
request for a second extension was reasonable presents a fact question, given well-pleaded facts
suggesting that the second master's degree has little bearing on the job functions of a CUNY
librarian.  See, e.g., Ralph v. Lucent Techs., Inc., 135 F.3d 166, 172 (1st Cir. 1998) ("The
defendant argues that it has already made a reasonable accommodation to the plaintiff's
disability by giving him 52 weeks of leave with pay, plus changing his work assignment and
supervisor.  The duty to provide reasonable accommodation is a continuing one, however, and
not exhausted by one effort.").[11]  "Ultimately, these fact-intensive questions are reserved for later
proceedings.  All that [a plaintiff] must do at the motion to dismiss stage is plead the existence of
a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."
Limauro v. Consol. Edison Co. of New York, Inc., No. 20-CV-03558 (CM), 2021 WL 466952,
at *8 (S.D.N.Y. Feb. 9, 2021) (citation and quotation marks omitted) (emphasis omitted).

---

[11]  Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 2000) – cited by CUNY – is not
on point.  In Parker, the Second Circuit stated that "[t]he duty to make reasonable
accommodations does not, of course, require an employer to hold an injured employee's position
open indefinitely while the employee attempts to recover. . . . " Id. at 338.  Here, Plaintiff
requested a second year-long extension of the deadline to obtain his second master's degree.  He
did not seek an indefinite extension of time.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss the Amended Complaint (Dkt. No. 25) is granted.  Plaintiff's motion for leave to amend (Dkt. No. 23) is granted to the extent that Plaintiff may file a Second Amended Complaint against Defendant CUNY pleading a Rehabilitation Act Section 504 claim.  The Second Amended Complaint is to be filed by **April 2, 2021**.  The Clerk of Court is directed to terminate the motions (Dkt. No. 23 and 25).

Dated: New York, New York
       March 30, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

20