UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYNAN HOFFMAN,

               Plaintiff,

    - v -

CITY UNIVERSITY OF NEW YORK,

               Defendant.

**ORDER**

20 Civ. 1729 (PGG) (RWL)

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, Plaintiff Tynan Hoffman brings a claim of disability discrimination under Section 504 of the Rehabilitation Act against his former employer, Defendant City University of New York ("CUNY"). (Second Amended Complaint ("SAC") (Dkt. No. 30) ¶ 2) Plaintiff worked at CUNY as a reference librarian, and alleges that he suffers from depression, that CUNY denied him a reasonable accommodation, and that CUNY ultimately terminated his employment. (Id. ¶ 46)

        On December 16, 2021, Defendant moved for summary judgment. (Dkt. No. 54) On September 19, 2023, this Court referred Defendant's motion to Magistrate Judge Lehrburger for a Report and Recommendation ("R&R"). (Dkt. No. 74) On March 29, 2024, Judge Lehrburger issued a 33-page R&R recommending that Defendant's motion for summary judgment be denied. (Dkt. No. 78) On April 12, 2024, Defendant filed objections to Judge Lehrburger's R&R. (Dkt. No. 79) Plaintiff filed a response to Defendant's objections on May 1, 2024. (Dkt. No. 82)

        For the reasons stated below, this Court will adopt Judge Lehrburger's R&R in its entirety, and Defendant's motion for summary judgement will be denied.

## BACKGROUND

I.    FACTS[1]

    A.    **The Librarian Instructor Position**

In 2013, Plaintiff was hired to work as a librarian at the City College of New York ("CCNY"), which is part of Defendant CUNY. (R&R (Dkt. No. 78) at 2) He received the title and academic rank of "Instructor." (Id.)

In CUNY's constituent colleges, "librarians are considered faculty members and are subject to requirements that are similar to those of classroom professors." (Id.) Instructors are "appointed on annual contracts, which, according to CUNY policy, may be renewed a maximum of four times for a total of five years in the position." (Id.) Instructors are required to attain certain academic goals during those five years, and "[i]f they reach those goals, they become eligible for, and usually receive, an appointment as a tenure-track Assistant Professor." (Id.) For instructors who serve as librarians,

> the relevant academic goal to become eligible for an Assistant Professorship is to have completed – in addition to their initial master's degree in library science – a doctorate or a second master's degree in the discipline of their choice, or, according to CUNY's Code of Practice Regarding Instructional Staff Titles, "in exceptional cases some other logical combination of two years' graduate study or more beyond the bachelor's degree." (Def 56.1 ¶ 6; Pl. Opp. 56.1 ¶ 6; Code Of Practice Regarding Instructional Staff Titles: Title Descriptions And Minimum Qualifications, attached as Ex. 2 to Def. 56.1, Dkt. 55-3, at 9.)

(Id. at 2-3)

---

[1] Because the parties have not objected to Judge Lehrburger's account of the facts, this Court adopts it in full. See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section . . . ."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

Instructors who do not reach the prescribed academic goals are "no longer eligible for employment after their fifth year in an Instructorship position." (Id. at 3) According to Vincent Boudreau, President of CCNY, the "main reason" that librarian Instructors must obtain a second master's degree within five years is

> to demonstrate that [they have] the capacity to take on the additional academic responsibilities of a tenure-track Assistant Professor, who unlike an Instructor, will be expected to produce significant scholarly research as well as perform library service tasks. An instructor position functions, in effect, as an apprenticeship and pathway to the more demanding position to which Instructors generally aspire. The main reason for the time limit is that a tenure-track Assistant Professor must produce significant scholarly research within a limited time, so the Instructor must show the capacity to earn the necessary qualifications in a limited time.

(Boudreau Decl. (Dkt. No. 60) ¶ 4)

**B.  Plaintiff's Initial Progress Towards Attaining His Second Master's Degree**

In the spring semester of 2014, Plaintiff enrolled in a master's degree program in international affairs at CCNY. (R&R (Dkt. No. 78) at 3) That degree "require[s] completion of 33 credits in courses while maintaining a cumulative grade point average of 3.0 and completion of a thesis of approximately 45 pages." (Id.) Plaintiff earned grades of As and Bs in the classes he took during his first two semesters. (Id.) "[P]roblems arose in the fall of 2015," however, when Plaintiff's

> grades began to drop, and he withdrew from a required course. (Hoffman Dep. 22:23-23:24.) The following year, he took four courses, but only completed one. (Graduate Transcript, attached as Ex. 6 to Def. 56.1, Dkt. 55-7.) In 2017, he did not take any courses. (Id.; Hoffman Dep. 35:7-10.) By the end of the Spring 2018 semester, Hoffman had four incomplete grades, one withdrawn grade, and had "rough outlines" of his thesis. (Pl. Opp. 56.1 ¶ 9; Graduate Transcript; Hoffman Dep. 25:18-21.)

(Id. at 3-4)

3

### C.    <u>Plaintiff Is Granted a One-Year Extension</u>

In November 2017, Plaintiff "told his supervisor Charles Stewart, Associate Dean and Chief Librarian at CCNY, that he was struggling with depression." (<u>Id.</u> at 4)  Stewart viewed Plaintiff as a "valuable employee" and decided to seek an extension of time for him, believing "that Hoffman had nearly finished his coursework and would soon complete his thesis." (<u>Id.</u>)

In a November 29, 2017 letter to CUNY's Office of Academic Affairs, Stewart requested a one-year extension of the five-year limit on Plaintiff's Instructor position. (<u>Id.</u>) Mary Driscoll, CCNY's Interim Provost, recommended to CUNY's Executive Vice Chancellor and Provost that the five-year limit be waived, explaining that she "did not anticipate a need for an additional extension of [Plaintiff's] term as an Instructor." (<u>Id.</u>)

On June 2, 2018, CCNY's Human Resources Department notified Plaintiff that CUNY's Board of Trustees had approved the waiver and granted Plaintiff an additional year to complete the requirements for his second master's degree. (Def. 56.1 Stmt. (Dkt. No. 55) ¶ 15)

### D.    <u>Plaintiff Requests a Second One-Year Extension</u>

Plaintiff did not complete the requirements for his second master's degree during the one-year extension. By the end of Plaintiff's sixth year as an Instructor, Plaintiff "still had 15 credits and a thesis to complete." (R&R (Dkt. No. 78) at 4)  In May 2019, Stewart told Plaintiff that he "would not recommend another waiver of the five-year limit but suggested that Hoffman could apply to Human Resources to seek a formal disability accommodation." (<u>Id.</u> at 4-5)

On May 9, 2019, Plaintiff met with Cornel Clarke, Associate Director of Human Resources, to "discuss Hoffman's requested accommodation of a second additional year in the Instructor position." (<u>Id.</u> at 5)  As the Human Resource Director's designee, Clarke was responsible for making the initial determination concerning CCNY employees' accommodation

4

requests.  (Id.)  After meeting with Clarke, Plaintiff submitted a formal request for an

accommodation and provided medical documentation concerning his disability.  (Id.)  In his

request, Plaintiff stated that

> he and his medical providers were in the process of finding the right combination
> of medications to effectively treat his depression and that they were "zeroing in
> on the management of [his] condition."  (Reasonable Accommodation Request
> Form, Dkt. 55-17 at 1.)  In the assessment form provided to Human Resources,
> Hoffman's psychiatrist stated that his major depressive disorder likely
> significantly impaired his ability to complete his coursework but that she believed
> "treatment of his current depressive episode will likely enable him to complete
> this degree and return to his previously high level of functioning at work."  (Pl.
> Mem at 4.)  And, both Hoffman's psychologist and psychiatrist indicated on their
> forms that after reviewing the job description of Instructor, they believed
> Hoffman's requested accommodation of an additional year would "enable [their]
> patient to perform the essential functions of the position."  (See Redacted
> Healthcare Provider Accommodation Assessment Form, Dkt. 55-19 at 7.)

(Id. at 5-6)  Clarke reviewed the medical documentation and "concluded that Hoffman had a

mental health condition that had impaired his ability to complete his degree requirements."  (Id.)

While Clarke had previously handled about 100 disability accommodation

requests, he was not familiar with Plaintiff's position as an Instructor at the CCNY library.  (Id.
at 6)  Accordingly, after reviewing Plaintiff's submissions, Clarke spoke with (1) Charles
Stewart, CCNY's Chief Librarian, "to get his perspective on the requirements of the Instructor
position, the reason for those requirements, and the impact granting an extension might have on
them"; (2) Erica Stephens, who oversees faculty matters in Human Resources; (3) William
Gibbons, Plaintiff's immediate supervisor; and (4) Kenneth Norz, who is assigned to the office
of CUNY's Vice Chancellor for Academic Affairs, "to better understand the requirements of the
Instructor position and the impact an extension would have on CUNY policy."  (Id.)  Clarke also
reviewed CUNY's Bylaws and Code of Practice Regarding Instructional Staff Titles.  (Clarke
Decl. (Dkt. No. 59) ¶ 9)

Once Clarke had "spoken to everyone and reviewed the documentation submitted," he determined that an additional one-year "extension was not an accommodation that could be granted without fundamentally altering the nature, operations, or standards of the Instructor position." (Id. ¶ 14)  In an August 20, 2019 letter, Clarke informed Plaintiff of his decision.  (R&R (Dkt. No. 78) at 7)

### E.  Plaintiff's Appeal and CCNY's Final Decision

On October 14, 2019, Plaintiff appealed the denial of his accommodation request to CCNY's Chief Diversity Officer, Diana Cuozzo.  (Id. at 7)  Cuozzo then "reviewed the relevant CUNY Bylaws, Code of Practice, and Clarke's files from the initial determination"; "spoke to both Clarke and Stewart to understand Hoffman's position and request"; and "spoke with Hoffman and his attorney and reviewed their written submissions."  (Id.)

CCNY's President makes the final decision concerning accommodation requests. (Id.)  Accordingly, Cuozzo prepared a memorandum for CCNY President Vincent Boudreau addressing Hoffman's request.  Cuozzo recommended that Hoffman's request for a second one-year extension be denied "because it would be an undue hardship, fundamentally altering CUNY policies, procedures, and professional requirements."  (Cuozzo Decl. (Dkt. No. 58) ¶ 13) Boudreau agreed that granting a second one-year extension of the five-year time limit "would be inconsistent with the temporary nature of the Instructor position, which is, in its essence, a time-limited, up-or-out position in the nature of an apprenticeship preparing the Instructor for the anticipated duties of a tenure-track Assistant Professor."  (Boudreau Decl. (Dkt. No. 60) ¶ 13)

Boudreau's final decision denying Plaintiff's application for a second one-year extension was issued on December 5, 2019.  (R&R (Dkt. No. 78) at 7)

## II.    **PROCEDURAL HISTORY**

The Complaint was filed on March 2, 2020, names CCNY as the sole defendant, and alleges violations of the Americans with Disabilities Act (the "ADA"), the New York City Human Rights Law (the "NYCHRL"), and the New York State Human Rights Law (the "NYSHRL").  (Dkt. No. 1)

On May 5, 2020, Plaintiff filed the First Amended Complaint ("FAC"), which adds CUNY as a Defendant and adds a claim under Section 503 of the Rehabilitation Act.  (Dkt. No. 12)  On August 4, 2020, Plaintiff moved for leave to amend to add a claim of disability discrimination under Section 504 of the Rehabilitation Act.  (Dkt. No. 23)

On August 28, 2020, Defendants moved to dismiss the FAC (Dkt. No. 25), and on March 30, 2021, this Court granted Defendants' motion.  However, this Court also granted Plaintiff's motion for leave to file a Second Amended Complaint that alleged a claim under Section 504 of the Rehabilitation Act against CUNY.  (Dkt. No. 29)

Plaintiff filed the Second Amended Complaint on April 1, 2021.  (Dkt. No. 30)  On December 16, 2021, Defendant moved for summary judgment.  (Dkt. No. 54)  Plaintiff filed an opposition brief on January 14, 2022 (Dkt. No. 65), and Defendant filed a reply on January 25, 2022.  (Dkt. No. 64)

This Court referred Defendant's motion to Magistrate Judge Lehrburger for an R&R on September 19, 2023.  (Dkt. No. 74)  On March 29, 2024, Judge Lehrburger issued an R&R recommending that this Court deny Defendant's motion for summary judgment.  (Dkt. No. 78)  Defendant filed objections to Judge Lehrburger's R&R on April 12, 2024.  (Dkt. No. 79)  Plaintiff filed a response to Defendant's objections on May 1, 2024.  (Dkt. No. 82)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of Magistrate Judge's Report & Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to the magistrate judge's R&R. Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where, as here, a timely objection has been made to a magistrate judge's R&R, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d

201, 211 (S.D.N.Y. 2013) (quoting <u>Vega v. Artuz</u>, 97CIV.3775LTSJCF, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (second alteration in <u>Phillips</u>).  "To the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, [courts] will review the Report strictly for clear error."  <u>IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.</u>, No. 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing <u>Pearson-Fraser v. Bell Atl.</u>, No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and <u>Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan</u>, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); <u>see also</u> <u>Ortiz v. Barkley</u>, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . 'rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

### B.    Rule 56 Motions for Summary Judgment

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that the party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." <u>Beyer v. Cnty. of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted). "'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.'" <u>Lesavoy v. Lane</u>, No. 02 Civ. 10162, 2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting <u>Bay v. Times Mirror Mags., Inc.</u>, 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing

summary judgment." <u>Spinelli v. City of New York</u>, 579 F.3d 160, 166 (2d Cir. 2009) (quotation marks and citation omitted). However, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. Mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks, alterations, and citation omitted). "'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" <u>Eviner v. Eng</u>, No. 13-CV-6940 (ERK), 2015 WL 4600541, at *6 (E.D.N.Y. July 29, 2015) (quoting <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996)).

 A moving party can demonstrate the absence of a genuine issue of material fact "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." <u>Nick's Garage, Inc. v. Progressive Cas. Ins. Co.</u>, 875 F.3d 107, 114 (2d Cir. 2017) (quotation marks and citation omitted)

### C.   <u>Section 504 of the Rehabilitation Act</u>

 Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under any covered program or activity. 29 U.S.C. § 794(a). The Rehabilitation Act "prohibit[s] discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." <u>Powell v. Nat'l Bd. of Med. Examiners</u>, 364 F.3d 79, 85 (2d Cir.), <u>opinion corrected</u>, 511 F.3d 238 (2d Cir. 2004).

"An employee suing for failure to make reasonable accommodations [under Section 504] must establish four elements to make [out] a prima facie case: that '(1) [the] plaintiff is a person with a disability under the meaning of the [Act]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" Quadir v. New York State Dep't of Lab., No. 13-CV-3327 JPO, 2016 WL 3633406, at *2 (S.D.N.Y. June 29, 2016) (brackets in original) (quoting Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004)). After this prima facie case is established, "an employer can defeat such a claim if it shows '(1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue.'" Id. (quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999).

## II.     THE MAGISTRATE JUDGE'S R&R

Here, Defendant does not dispute that Plaintiff has proffered evidence sufficient to satisfy elements one, two and four of the prima facie case determination under Section 504. In other words, the parties agree "that Hoffman has a disability; that CUNY was put on notice of Hoffman's disability; and that CUNY denied Hoffman his requested accommodation." (R&R (Dkt. No. 78) at 11-12) Accordingly, Judge Lehrburger's R&R focuses on whether (1) as to element three, Plaintiff could "perform the essential functions of the job with or without a reasonable accommodation" (id. at 12); and (2) "CUNY has established that there is no genuine dispute that [Plaintiff's] proposed accommodation" would cause it "undue hardship." (Id. at 20)

With respect to element three of the prima facie case analysis, the parties disagree about what "the essential functions of the [librarian Instructor] job are and whether [Plaintiff could] perform[] [these tasks] with a reasonable accommodation." (Id. at 13)

As to the "essential functions" of the librarian Instructor job, Judge Lehrburger concludes that there are "two separate material issues of fact" on which a reasonable juror could find in favor of Plaintiff:

> The first is whether obtaining a second master's degree is essential to being an Instructor librarian. The second is whether, if obtaining the second degree is essential, is doing so within five years essential. If obtaining a second master's degree is not essential to the Instructor position, then Hoffman would be entitled to judgment. If both obtaining a second master's degree and doing so within five years are essential, then CUNY would be entitled to judgment because no accommodation could enable him to now complete the second master's within the five-year period. If a second master's degree is essential to the Instructor job, but doing so within five years is not, then there may be reasonable accommodations that could be made. On both questions, there is evidence by which a reasonable juror could find for Hoffman.
>
> For instance, . . . the job description for the librarian Instructor position does not state that an Instructor must earn a second master's degree at all, let alone within five years, although it does require that the candidate have "an interest in productive scholarship." (Code Of Practice Regarding Instructional Staff Titles: Title Descriptions And Minimum Qualifications, Dkt. 55-3, at 8.) In contrast, the description of Assistant Professor does explicitly reference the need for an additional master's degree (or completed doctorate) as an essential requirement of that position: "In the libraries, for promotion to or appointment as assistant professor, the candidate must, in addition to the requirements of instructor, have completed a doctorate or an additional master's degree." (Id. at 9.) One could reasonably infer from those descriptions that obtaining a second master's degree is a requirement of the Assistant Professor position but not the Instructor position. Additionally, CUNY previously afforded Hoffman an extra year to obtain his master's degree, demonstrating that the five-year time limit may not be so essential as CUNY claims.

(Id. at 15-16)

Because Judge Lehrburger finds "conflicting evidence as to whether obtaining a second master's degree, and doing so within five years[,] . . . are 'essential' to the librarian Instructor position," he concludes that there is a "genuine dispute precluding summary judgment." (Id. at 17)

Judge Lehrbruger further concludes that Plaintiff has "introduced evidence that a facially reasonable accommodation exists that permits him to perform the job at the same level

as a non-disabled employee" – namely, a one-year extension of time to complete the requirements for a second master's degree. (Id. at 17)  In this regard, Judge Lehrburger notes that (1) Plaintiff "previously received a year's extension to obtain his master's degree, demonstrating that the requested accommodation is feasible"; and (2) Plaintiff, his psychiatrist, and his psychologist "assert that his depression symptoms have improved enough to allow him to be successful in obtaining his master's degree within the next year." (Id. at 18-19)  Judge Lehrburger therefore concludes that Plaintiff has "proffered evidence sufficient to create a triable issue as to whether he could perform the essential requirements of his position with a reasonable accommodation." (Id. at 19-20)

As to whether Plaintiff's requested accommodation imposes an "undue hardship" on CUNY, Judge Lehrburger reports that "CUNY provides virtually no explanation as to how allowing Hoffman an additional year would work a fundamental alteration, in any practical sense, to its Instructorship program" (id. at 28):

> CUNY provides nothing beyond the merely conclusory to demonstrate that it engaged in "common-sense balancing of the costs and benefits" and considered the factors in the [Section 504] regulations.  See [Borkowski v. Valley Central School District, 63 F.3d 131, 138 (2d Cir. 1995)] ("a common-sense balancing of the costs and benefits in light of the factors listed in the regulations is all that is expected") (referring to 34 C.F.R. § 104.12(b)).  CUNY does not, for example, point to negative effects on its overall academic rigor, financial or administrative burdens, or its ability to fill its reference librarian positions.  Nor does CUNY suggest that it would be irresponsible to allow a librarian to continue to serve in their duties with only one master's degree. . . .

(Id. at 28)

CCNY President Vincent Boudreau states in his declaration that "a tenure-track Assistant Professor must produce significant scholarly research within a limited time, so the Instructor must show the capacity to earn the necessary qualifications in a limited time." (Boudreau Decl. (Dkt. No. 60) ¶ 4)  But Boudreau's explanation

does not explain why accommodating Hoffman for one additional year would **fundamentally** alter CUNY's Instructorship program. An additional year would still be a "limited" time, and Boudreau does not explain why, taking into account the time Hoffman needed to gain control over his mental disability, an extra year's time would be any less demonstrative of Hoffman's capacity to take on the additional academic responsibilities of a tenure-track Assistant Professor.

(Id. at 31) (emphasis in original)

Judge Lehrburger finds that "a reasonable factfinder could conclude that granting Hoffman's requested accommodation of an additional year would not have constituted a 'fundamental alteration' of CUNY's programs or standards." (Id. at 32-33)

Judge Lehrburger therefore recommends that Defendant's motion for summary judgment motion be denied. (Id. at 33)

## III.    DEFENDANT'S OBJECTIONS TO THE R&R

In its objections, Defendant CUNY broadly asserts that Judge Lehrburger erred in (1) "determining that there is a question of material fact about whether plaintiff was able to perform the essential functions of an Instructor"; (2) "finding an issue of fact as to the reasonableness of the requested accommodation"; and (3) "finding that CUNY did not meet its burden of showing undue hardship" (Def. Obj. (Dkt. No. 79) at 25-28)[2]

---

[2]  While styled as "objections" to the R&R, Defendant's submission is instead a mere rehashing of its summary judgment briefing. The factual portions of Defendant's objections are copied verbatim from Defendant's moving papers (compare Def MSJ Br. (Dkt. No. 61) at 7-18, with Def. Obj. (Dkt. No. 79) at 9-21), and the legal arguments in Defendant's Objections are copied verbatim from Defendant's moving brief, including with citations to the same cases for the same propositions. (Compare Def MSJ Br. (Dkt. No. 61) at 20-24, with Def. Obj. (Dkt. No. 79) at 22-26) Given that Defendant merely repeats arguments made before Judge Lehrburger, Defendant's objections are not sufficient to invoke de novo review. Accordingly, this Court reviews the R&R solely for clear error. See Phillips, 955 F. Supp. 2d at 211.

A.    **Essential Functions of a Librarian Instructor**

Defendant contends that Judge Lehrburger "erred in determining that there is a question of material fact about whether plaintiff was able to perform the essential functions of an Instructor."  According to Defendant,

> [P]laintiff's maximum term as an Instructor had expired, without the right to reappointment.  As the Report recognizes, the CUNY Bylaws provide that Instructors shall be appointed for no more than four successive annual reappointments."  (Report, p. 16, citing ECF No. 55-2)  This is undisputed.  It is further undisputed that obtaining a second master's degree within five years is a requirement for advancing beyond the Instructor position. (Id., citing Stewart Decl. ¶¶ 5, 16, 23; Clarke Decl. ¶ 9; Cuozzo Decl. ¶¶ 2, 11; Boudreau Decl. ¶ 4). There is no admissible evidence to the contrary.  Thus, the Report erred in holding that this was an issue of fact, and summary judgment is warranted.

(Def. Obj. (Dkt. No. 79) at 26)

Judge Lehrburger notes, however, that ""although courts are deferential to an employer's judgment regarding what functions are essential to a particular position, the question involves a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice.'"  (R&R (Dkt. No. 78) at 13) (quotation marks omitted) (quoting Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 469 (2d Cir. 2019)).  In determining what are the "essential functions" of a job, courts consider, inter alia, "[t]he employer's judgment as to which functions are essential"; "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job"; "[t]he amount of time spent on the job performing the function"; "[t]he consequences of not requiring the incumbent to perform the function"; "[t]he terms of a collective bargaining agreement"; "[t]he work experience of past incumbents in the job"; and "[t]he current work experience of incumbents in similar jobs."  Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997) (citing ADA regulations at 29 C.F.R. § 1630.2(n)).

As an initial matter, it is undisputed that – setting aside Plaintiff's failure to obtain his second master's degree – "plaintiff's general performance [as a librarian Instructor] was otherwise satisfactory." (Def. Obj. (Dkt. No. 79) at 19)

As to whether the "essential functions" of the librarian Instructor position include obtaining a second master's degree within five years, Judge Lehrburger acknowledges that

> both CUNY and Hoffman expected that Hoffman would move on to a tenure-track Assistant Professor position after five years. (Hoffman Dep. 14:14-19; Boudreau Decl. ¶ 3; Stewart Decl. ¶ 4.) And, the CUNY Bylaws provide that Instructors shall be appointed for no more than four successive annual reappointments. (CUNY Bylaws, attached as Ex. 1 to Def. 56.1, Dkt. 55-2.) Considering that limitation, together with the job descriptions for Instructor librarian and Assistant Professor librarian, a reasonable inference could be made that both obtaining a second master's and doing so within five years, while holding the Instructor position, are essential. Moreover, the declarations of Clarke, Stewart, Cuozzo, and Boudreau all state that a obtaining a second master's degree within five years is a "requirement" of the Instructor position. (See Stewart Decl. ¶¶ 5, 16, 23; Clarke Decl. ¶ 9; Cuozzo Decl. ¶¶ 2, 11; Boudreau Decl. ¶ 4). Additional evidence may be found in the experience of past and current Instructors, none of whom have held the position for more than four annual renewals. (Human Resources Spreadsheet, attached as Ex. 25 to Def. 56.1, Dkt. 55-26.)

(R&R (Dkt. No. 78) at 16)

But Judge Lehrburger also finds that there is conflicting evidence on this point. (See id. at 15-17) For example, the job description for the librarian Instructor position does not mention any requirement that the librarian Instructor is required to obtain a second master's degree, much less that the second master's degree must be secured within five years. (Def. R. 56.1 Stmt., Ex. 2 (Code Of Practice Regarding Instructional Staff Titles: Title Descriptions And Minimum Qualifications) (Dkt. No. 55-3) at 9-10) By contrast, the job description for the Assistant Professor position states that a candidate must have "completed a doctorate or an additional master's degree." (Id. at 10) This Court agrees with Judge Lehrburger that "[o]ne could reasonably infer from those descriptions that obtaining a second master's degree is a

requirement of the [Assistant] Professor position but not the Instructor position." (R&R (Dkt. No. 78) at 16)

Moreover, as Judge Lehrburger also points out, CUNY granted Plaintiff an extra year to obtain his master's degree, which suggests that "the five-year time limit may not be so essential as CUNY claims." (Id.)

Given the fact-sensitive nature of the "essential functions" inquiry, and the conflicting evidence as to whether it is "essential" to the librarian Instructor position to obtain a second master's degree, and to do so within five years, this Court agrees with Judge Lehrburger that there is a material issue of fact as to this issue.

Accordingly, Defendant's objection is overruled.

**B.    Reasonable Accommodation**

Defendant also contends that Judge Lehrburger "erred in finding an issue of fact as to the reasonableness of the requested accommodation":

> The undisputed facts show that plaintiff's requested accommodation would have required CUNY to substantially modify its academic standards and violate the CUNY ByLaws.  What plaintiff asks for here is to be given at least an additional year on CUNY's payroll – after the maximum time in the job allowed under the Bylaws had already expired – to try again what he had failed to do before.  Unlike a leave of absence, as in Bahl v. N.Y. College of Osteopathic Medicine of N.Y. Inst. of Technology, 2:14 civ. 04020 (MRM) (LGD), 2023 WL 4673007 at 10 (E.D.N.Y. July 21, 2023), this was a modification of program standards, and "a proposed accommodation can be deemed a substantial modification when the accommodation changes program standards or assessments themselves."
>
> Thus, plaintiff's requested accommodation is thus not akin to "job restructuring" or "modified work schedule" or another "similar action."  (Report, p. 18)  Instead, it is a fundamental alteration of the legitimate purpose of the Instructor position, which is temporary by design.  Plaintiff's request to extend his time serving in a position that is by definition term-limited is not required by the law.  See Parker v. Columbia Pictures Indus., 204 F.3d 326, 338 (2d Cir. 2000) ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely.").

(Def. Obj. (Dkt. No. 79) 26-27) (footnotes omitted)

The Second Circuit has instructed, however, that the "burden of production" as to "the requirement that an accommodation be reasonable" is "not a heavy one." Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995). "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this, she has made out a prima facie showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant." Id. (citations omitted).

Here, the accommodation that Plaintiff requests is one more year to complete the requirements for a second master's degree. As Judge Lehrburger notes, Plaintiff "previously received a year's extension to obtain his master's degree," which demonstrates that the requested accommodation is feasible. (R&R (Dkt. No. 78) at 19) Moreover, Defendant does not dispute that Hoffman, his psychiatrist, and his psychologist have all represented that Hoffman's "depression symptoms have improved enough to allow him to be successful in obtaining his master's degree within the next year." (Id.; see Def. R. 56.1 Stmt., Ex. 16 (Reasonable Accommodation Request Form) (Dkt. No. 55-17) at 2; id., Ex. 18 (Healthcare Provider Accommodation Assessment Form) (Dkt. No. 55-19) at 2-3, 5-7))

Citing the declaration of Jean Krasno – a lecturer at CCNY who has taught Plaintiff in the past – Defendant contends that it is unlikely that Plaintiff can complete the remaining requirements for a second master's degree in a year. (Def. Obj. (Dkt. No. 79) at 26 n.12; see also id. at 15-16) But Defendant also repeatedly states that its determination concerning Plaintiff's request for an additional year was not premised on or influenced by concerns that he would not be able to complete the remaining requirements in a year's time. See id. at 17 (stating that Cornel Clarke, CCNY's Associate Director of Human Resources,

concluded that whether Plaintiff could "complete his degree" in a year's time "was not going to be relevant to the decision"); id. at 18 ("[T]he question of whether plaintiff could finish his degree requirements if given another year was not something Mr. Clarke ultimately considered in reaching his decision."); id. at 20 (stating that the issue of whether "plaintiff could succeed in completing his courses and thesis if given another year" "played no part" in the decision of CCNY's Chief Diversity Officer to deny Plaintiff's requested accommodation).  In any event, Hoffman, his psychiatrist, and his psychologist have all represented that – because of changes in his medication that have brought his major depressive disorder under control – he will be able to complete the remaining degree requirements within a year's time.  (Def. R. 56.1 Stmt., Ex. 16 (Reasonable Accommodation Request Form) (Dkt. No. 55-17) at 2; id., Ex. 18 (Healthcare Provider Accommodation Assessment Form) (Dkt. No. 55-19) at 2-3, 5-7); Oct. 4, 2021 Hoffman Dep. Tr. (Dkt. No. 69) at 63 (Q: Anything else get discussed, any other options for getting the additional year? A: I explained to them – to him it had taken a while to find a cocktail of medication to work. I believe I told him about that, that I felt that the medication was finally, you know, actually working, that I felt confident that I could do it."))  Accordingly, there is a material issue of fact as to whether Plaintiff would be able to complete his degree requirements in one year.  And this dispute of fact is directly relevant to whether Plaintiff's requested accommodation – a one-year extension of time – is reasonable.

       Defendant also argues that granting Plaintiff's request for an additional year would impose an "undue hardship" on it, because the requested accommodation would require CUNY to "substantially modify its academic standards."  According to CUNY, granting the one-year extension would constitute "a fundamental alteration of the legitimate purpose of the Instructor position, which is temporary by design."  (Def. Obj. (Dkt. No. 79) at 26-27)

As an initial matter, Defendant previously granted Plaintiff a one-year extension to complete the requirements for his second master's degree, and CUNY does not explain why that action (1) was permissible under its "academic standards"; and (2) did not constitute "a fundamental alteration" of the Instructor position.

More broadly, CUNY does not explain the costs associated with granting Plaintiff a second one-year extension. For example, CUNY does not identify any administrative or financial burdens associated with granting the requested accommodation, or any negative effects on the rigor or reputation of its academic program.

Given the evidence that (1) Plaintiff's requested one-year accommodation is feasible; and (2) Plaintiff could finish his degree requirements in one year; and the lack of evidence regarding the burden that the proposed one-year accommodation would place on CUNY, there is a material issue of fact as to whether Plaintiff's requested accommodation was reasonable.

The cases cited by Defendant are not to the contrary. In Bahl v. New York Coll. of Osteopathic Med. of New York Inst. of Tech., 683 F. Supp. 3d 224 (E.D.N.Y. 2023), the court found that plaintiff – a medical student – "met his 'light,' burden to show the facial reasonableness or plausibility of his requested accommodation," which consisted of a "six-month leave for treatment designed to remedy certain deficits related to Attention Deficit Hyperactivity Disorder (ADHD), Generalized Anxiety Disorder (GAD), Deficits in Executive Function, and Speech Cluttering." Id. at 235. While acknowledging that "a proposed accommodation can be deemed a substantial modification when the accommodation changes program standards or assessments," the court found that the "record is 'devoid of evidence' to support [the

defendant's] contention" that "the requested six-month [leave] would require a substantial modification to its standards."  Id. at 236 (citation and quotation marks omitted).

And in Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir. 2000), the court noted that "the duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely."  Id. at 238.  But Plaintiff did not request an indefinite extension of time to obtain his second master's degree; he requested a one-year extension to complete the necessary requirements for that degree.

In sum, this Court agrees with Judge Lehrburger that Plaintiff satisfied his burden to proffer evidence that "creates a triable issue as to whether he could perform the essential requirements of his position with a reasonable accommodation."  (R&R (Dkt. No. 78) at 20)  Accordingly, Defendant's objection is overruled.

### C.    Undue Hardship

Plaintiff also contends that Judge Lehrburger "erred in finding that CUNY did not meet its burden of showing undue hardship."  According to Defendant,

> the undisputed evidence shows that plaintiff's requested accommodation would require CUNY to waive its requirements and change academic standards.  Indeed, the Report cites numerous cases dismissing failure to accommodate claims against academic institutions involving failure to meet the requirements of the program in a timely fashion.  (Report, pp. 22-24, citing Brief v. Albert Einstein College of Medicine, 423 Fed. App'x 88 (2d Cir. 2011) and Powell[, 364 F.3d 79].  In both those cases, the educational institution was allowed to enforce policies requiring timely completion of academic requirements before continuing in their programs.  In those cases, the students failed examinations.  In this case, plaintiff failed to complete coursework and a master's thesis in a timely fashion.  That is simply not a material difference, especially since plaintiff lost his entitlement to continue to serve as an Instructor by the passage of time rather than his academic shortcomings.

(Def. Obj. (Dkt. No. 79) at 28)[3]

---

[3]  Defendant made this same argument in its opening brief seeking summary judgment:

In concluding that CUNY's claim of "undue hardship" presents material issues of

fact, Judge Lehrburger carefully reviewed – and distinguished – the case law on which

Defendant relies:

> In the education context, courts have found undue hardship where a plaintiff's requested accommodation would require the school to waive graduation or licensing requirements or change academic standards. See, e.g., Brief v. Albert Einstein College of Medicine, 423 F. App'x 88, 91 (2d Cir. 2011) (granting summary judgment for defendant because allowing a medical student to remain in the program despite failing more exams than the school's bylaws permitted would be contrary to its "promulgated academic standards . . . [concerning] failures of examinations"); Powell, 364 F.3d 79 (granting summary judgment for defendant because allowing a medical school student to continue with her medical degree without passing the first part of a required licensing exam "would unreasonably alter the nature of its program."); Lipton v. New York University College of Dentistry, 865 F. Supp.2d 403, 410 (S.D.N.Y. 2012) (granting defendant's motion to dismiss because requested accommodations were unreasonable where they amounted to a "waiver of a graduation requirement"), aff'd, 507 F. App'x 10 (2d Cir. 2013); Falchenberg v. New York State Department of Education, 642 F. Supp.2d 156, 161 (S.D.N.Y. 2008) (granting summary judgment for defendant where allowing plaintiff to take a teacher certification exam with a dictionary,

---

> Timely attainment of academic benchmarks for further advancement is something educational institutions are entitled to regard as a fundamental aspect of their programs. See Powell v. National Bd. of Med. Examiners, 364 F.3d 79, 88 (2d Cir. 2004) (affirming summary judgment dismissing ADA and Rehabilitation Act claims against medical school that required student to pass a Step I examination in order to advance to third year).  Particularly instructive in this regard is Lipton v. NYU College of Dentistry, 865 F. Supp. 2d 403, 410 (S.D.N.Y. 2012).  In Lipton, a dental student repeatedly failed to pass a national examination that the dental school required its students to pass within 14 months of completion of coursework.  The student sought, as a disability accommodation, relief from the time limit, and brought ADA and Rehabilitation Act claims when the proposed accommodation was denied. The court dismissed plaintiff's claim because the proposed accommodation "would alter important academic policies to a great degree," and the dental school "has a right to impose a time limit in which its graduation requirements must be completed.  Such time periods have the obvious and important purpose of contributing to the discipline and rigor desirable in a professional education."  Lipton, 865 F. Supp. 2d at 410.  So too here.  CUNY has set a time limit for the accomplishment of academic goals and is equally entitled to do that.

(Def. MSJ Br. (Dkt. No. 61) at 23)  Accordingly, this Court reviews Judge Lehrburger's analysis of this issue solely for clear error.  Phillips, 955 F. Supp. 2d at 211.

extra time, frequent breaks, and as an oral exam would "fundamentally alter the measurement of the skills the examination is intended to test" and was therefore not a reasonable accommodation), aff'd, 338 F. App'x 11 (2d Cir. 2009).

CUNY asserts that like the schools in the above cases, CUNY is entitled to regard timely attainment of academic benchmarks for further advancement as a fundamental aspect of its program that cannot be changed to accommodate Hoffman's disability. (Def. Mem. at 18.) Allowing Hoffman a second extra year to complete his second master's degree and remain in his position as an Instructor would, CUNY argues, force CUNY to change its academic and professional standards. (Id.) CUNY highlights as particularly apt Lipton v. NYU College of Dentistry. In Lipton, a dental school student repeatedly failed to pass a national board exam that the dental school required its students to pass within 14 months of completion of coursework. The plaintiff, who had already received an extension of time to take his exams, requested as an accommodation that he be permitted to take the exam "an unlimited number of times over a reasonable period" and a "waiver of graduation requirements." 865 F. Supp.2d at 407. The court reasoned that the requested accommodation would impose an undue hardship on the defendant because it would "alter important academic policies to a great degree" and the school had "a right to impose a time limit in which its graduation requirements must be completed." Id. at 409. So too at CUNY, CUNY argues.

Lipton is materially distinguishable. In Lipton, the plaintiff requested that he be allowed to retake the exam an unlimited number of times during an undefined "reasonable amount of time," which amounted, in plaintiff's own words, to "a waiver of graduation requirements." Id. at 410. Here, Hoffman does not request that his time in the Instructor position be extended indefinitely. Nor does he request that CUNY waive its requirement that Instructors earn their second master's degree before becoming eligible for an Assistant Professor position. Instead, he requests one more year to finalize his degree while remaining an Instructor.

Brief and Powell also are distinguishable on similar grounds. In Brief, the plaintiff requested that he be permitted to continue his medical school degree despite his repeated failure of multiple exams, which, under the school's bylaws, required that he be dismissed from the medical program. 423 F. App'x 88, 91 (2d Cir. 2011). The Court reasoned that "in light of Brief's numerous exam failures, allowing him to continue as a student would be contrary to the school's academic standards." Id. at 92. Unlike Brief, Hoffman does not ask to be excused from passing the classes required to earn his degree. Rather, he requests one more year to complete his outstanding courses and finish his thesis. In Powell, a medical student requested that she be permitted to advance to her third year of medical school, which would involve clinical work treating patients, without passing her second year of medical school. 364 F.2d at 88. Hoffman, in contrast, does not request dispensing with a requirement altogether. Rather, he asks for additional time to complete his second master's degree. Not to mention that treating patients

without basic medical knowledge is quite different from performing the work of a reference librarian with a master's degree in library science but not a second master's degree in an unrelated field.

(R&R (Dkt. No. 78) at 22-24)

This Court finds no error in Judge Lehrburger's analysis.  Accordingly, Defendant's objection is overruled.

Defendant CUNY's final objection to the R&R relates to its argument that, "as an academic institution, its determination that Hoffman's requested accommodation would cause it undue hardship is owed 'enhanced' deference from the Court."  (Id. at 26)  Judge Lehrburger concludes that CUNY's determination is not entitled to deference, because CUNY did not "diligently assess" the effect of Plaintiff's requested accommodation.  (Id. at 27-31)  Defendant complains that

> that the CCNY administration "consulted each other and applicable policies," and "has proffered some evidence that Hoffman's requested accommodation would alter the instructorship program," and it is hard to see what more could be expected for a diligent assessment.  If it is generally legitimate to limit a particular type of employment to a specific time, as it unquestionably is, it would be a purely advisory limit if it could be overcome by the simple claim that no harm would be done to the general policy by letting one individual have one extension. If that were the standard, no general policy regarding time-limited positions could survive scrutiny, and that is not and cannot be the law.

(Def. Obj. (Dkt. No. 79) at 25) (citation omitted)

"[A] court should defer to an academic institution's decision that a particular accommodation is not reasonable when it has 'diligently assessed the available options and then made an academic judgment . . . that to accommodate the student would work a change in the substance of its . . . program, and impose an undue hardship on its academic program.'"  Lipton v. New York Univ. Coll. of Dentistry, 865 F. Supp. 2d 403, 409 (S.D.N.Y. 2012) (quoting Powell, 364 F.3d at 88).  Such deference is not appropriate, however, where the academic institution has not "diligently assessed" whether the accommodation would require a

fundamental alteration to the academic caliber of its offerings.  Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 191 (2d Cir. 2015).

In Dean, the Second Circuit stated that,

[i]n order to obtain summary judgment, it was incumbent upon Defendants to submit a factual record establishing that in rejecting Dean's requested scheduling modification they diligently assessed whether the alteration would allow Dean the opportunity to continue in the M.D. program without imposing undue financial and administrative burdens on UBMED or requiring a fundamental alteration to the academic caliber of its offerings.  Where, as here, the record is devoid of evidence indicating whether Defendants evaluated these considerations in determining the reasonableness of the accommodation sought, we decline to extend the deference we ordinarily accord to the professional, academic judgments of educational institutions.

Dean, 804 F.3d at 191 (citation omitted).

While Defendant states that members of the CCNY administration "consulted each other and applicable policies" concerning Plaintiff's requested accommodation, and that CUNY "has proffered some evidence that Hoffman's requested accommodation would alter the instructorship program" (Def. Obj. (Dkt. No. 79) at 25), this effort does not amount to a "diligent assessment of the available options."

As Judge Lehrburger explains,

CUNY provides virtually no explanation as to how allowing Hoffman an additional year would work a fundamental alteration, in any practical sense, to its Instructorship program.  CUNY does not . . . point to negative effects on its overall academic rigor, financial or administrative burdens, or its ability to fill its reference librarian positions.  Nor does CUNY suggest that it would be irresponsible to allow a librarian to continue to serve in their duties with only one master's degree, as the defendant in Powell [v. Nat'l Bd. of Med. Examiners] argued with respect to allowing a medical student to continue her degree without proving mastery of basic medical knowledge. See Powell, 364 F.3d at 88.

(R&R (Dkt. No. 78) at 28)

In sum, CUNY merely asserts – in a conclusory fashion – that Plaintiff's requested accommodation would result in a "fundamental alteration" of the librarian Instructor

position.  And the fact that CCNY administrators consulted with each other about Plaintiff's

request for a one-year extension does not demonstrate that they engaged in a "common-sense

balancing of the costs and benefits" of granting Plaintiff's request for an accommodation.

Borkowski, 63 F.3d at 140.

Accordingly, Defendant's objection is overruled.

*       *       *       *

Having reviewed the remaining portions of Judge Lehrburger's 33-page R&R, the

Court concludes that the R&R is – as a whole – thorough, well-reasoned, and free of any clear

error.

## CONCLUSION

For the reasons stated above, Judge Lehrburger's R&R (Dkt. No. 78) is adopted in

its entirety, and Defendant's motion for summary judgment (Dkt. No. 54) is denied.  The Clerk

of Court is directed to terminate the motion (Dkt. No. 54).

This case will proceed to trial at **9:30 a.m. on October 21, 2024**, in Courtroom

705 of the United States Courthouse, 40 Foley Square, New York, New York.  The joint pretrial

order, motions in limine, requested voir dire, and requests to charge are due on **September 20,**

**2024**.  Responsive papers are due on **September 27, 2024**.  The parties are directed to consult

this Court's Individual Rules as to the contents of their pretrial filings.

Dated:  New York, New York
        August 26, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge